1   MICHAEL B. BROWN, Bar No. 179222
    michael.brown@stoel.com
2   THOMAS A. WOODS, Bar No. 210050
    thomas.woods@stoel.com
3   BENJAMIN J. CODOG, Bar No. 307034
    ben.codog@stoel.com
4   MICHELLE J. ROSALES, Bar No. 343519
    michelle.rosales@stoel.com
5   STOEL RIVES LLP
    500 Capitol Mall, Suite 1600
6   Sacramento, CA 95814
    Telephone: 916.447.0700
7   Facsimile: 916.447.4781

8   *Attorneys for Plaintiff*
    *METROPOLITAN LIFE INSURANCE COMPANY*

9

10                  UNITED STATES DISTRICT COURT

11        EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

12

13   METROPOLITAN LIFE INSURANCE          Case No. 1:24-CV-01226-KES-SAB
     COMPANY, a New York corporation,
14                                        **[PROPOSED] ORDER GRANTING**
                   Plaintiff,             **MOTION FOR ORDER APPOINTING**
15                                        **RECEIVER AND FOR PRELIMINARY**
            v.                            **INJUNCTION**
16
     FNF FARMS, LLC, a California limited
17   liability company; FARID ASSEMI, an
     individual; FARSHID ASSEMI, an       Date:
18   individual; DARIUS ASSEMI, an        Time:
     individual; and DOES                 Dept.:
19   1-100,
                                          Action Filed: October 9, 2024
20                 Defendants.            Trial Date: Not Set

21

22

23

24

25

26

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

[PROPOSED] ORDER GRANTING           -1-        CASE NO. 1:24-CV-01226-KES-SAB
MOTION RE RECEIVER

Upon due consideration of the Plaintiff's Ex Parte Motion for Order Appointing Receiver and for Preliminary Injunction ("MetLife Receivership Motion"), the Complaint (as defined below), the Declaration of Jeremy Rassmussen ("Plaintiff Declaration"), and the Declaration of proposed receiver Phillip Christensen ("Receiver Declaration"), the Oppositions filed to the Motion and the oral argument of counsel and good cause appearing therefor, and the Court being advised that the relief granted herein has been agreed to by both the Plaintiff and the Borrower Defendant (as defined below), and overruling any objections raised by any other parties appearing at the hearing hereon,

**The Court hereby FINDS as follows**:

A.      Appointment of a receiver is appropriate pursuant to Federal Rules of Civil Procedure 66; Local Rule 232; and the Court's inherent equitable power to order the appointment of a receiver under Federal law.

B.      Phillip Christensen of Agriglobe LLC is not interested in this action and is competent and qualified to act as receiver.

C.      Good cause exists for the appointment of a receiver in order to preserve perishable agriculture and property and to maximize the recovery to creditor-Plaintiff through the orderly sale of the assets of Defendant FNF FARMS, LLC ("Borrower Defendant"), and for the collection of obligations owed to Borrower Defendant.

D.      Good cause exists for the entry of a preliminary injunction restraining and enjoining all Defendants not limited to Borrower Defendant and their agents, partners, property managers, employees, assignees, successors, representatives, and all persons acting under and/or in concert with them from committing or permitting waste of the MetLife Receivership Property (defined below), including any misuse of cash from the operations of Borrower Defendant that are part of the MetLife Receivership Property; from removing, transferring, encumbering, or otherwise disposing of the MetLife Receivership Property; and from interfering with the receiver in the discharge of the MetLife Receiver's duties.

///

///

1    Having found the foregoing,

2    **IT IS ORDERED**:

3    1.      Phillip Christensen ("MetLife Receiver" or "Receiver") is appointed as a general

4    receiver.

5    2.      The MetLife Receiver is awarded exclusive possession and control over the

6    "MetLife Receivership Property" defined as follows:

7         a.   Real Property:

8              (i)   That property subject to the Deed of Trust, Security Agreement, Assignment
                     of Rents and Leases and Fixture Filing dated July 29, 2015, with the Fresno
9                    County Recorder's Office as Document No. 2015-0096562 ("Deed of
                     Trust"), not limited to APNs:
10

11                   APN: 038-200-04
                     APN: 038-200-09
12                   Portions of APN 038-130-19s
                     Portions of APN 038-130-58s

13                   Along with other property associated with said APNs not limited to
                     Proceeds, Crops, Water Rights, Improvements, Intangibles, Proceeds (as
14                   those terms are defined therein) and that property described in said Deed of
                     Trust.
15

16        b.   Other Collateral

17             (i)   That Property subject to and identified in Collateral Assignment of Water
                     Supply Agreement and Easement (as discussed in the Complaint and
18                   Declaration of Jeremy Rasmussen) recorded on September 11, 2024 with the
                     Fresno County Recorder as Document No. 2024-0082401 ("Collateral
19                   Assignment"), assignment to Lender as security for the Loan all rights and
                     interests of Borrower under the Water Supply Agreement and Easement
20                   dated as of July 29, 2015 benefitting and appurtenant to the Real Property
                     (the "Water Agreement").

21        c.   All rights, entitlements, leases, interests, contracts, contracts for sale, and business

22        affairs associated with and relating to the Trust Property and Collateral (including

23        real and personal property).

24   3.      Until further order of the Court, the MetLife Receivership Property and any disputes

25   related to the MetLife Receivership Property shall remain under this Court's exclusive jurisdiction.

26   4.      The MetLife Receiver shall not be subject to the control of any of the parties to this

27   matter but shall be subject only to the Court's direction in the fulfillment of the MetLife Receiver's

28   duties.

**Power and Duties of the Receiver**

The MetLife Receiver shall have the following authority, powers and duties:

5.      During the pendency of the receivership, the MetLife Receiver is authorized and directed to take possession of, manage, control and collect all present and future MetLife Receivership Property, wherever located (including such MetLife Receivership Property as may be in the possession or control of third parties). In the course of liquidating and collecting the MetLife Receivership Property, the MetLife Receiver is authorized to conduct limited operations of the MetLife Receivership Property if, in his business judgment, the benefit of such operations would exceed the cost.

6.      The MetLife Receiver shall have exclusive right to possession of the MetLife Receivership Property and may (in accordance with applicable state law) enter any other property where the MetLife Receivership Property may be located in order to recover or preserve such MetLife Receivership Property.

7.      The MetLife Receiver is authorized to sell or otherwise liquidate or dispose of any or all of the MetLife Receivership Property by public or private sale or such other method as deemed appropriate by the MetLife Receiver exercising business judgment. All sales of MetLife Receivership Property shall be "as is" and "with all faults," free and clear of liens, claims and encumbrances, without representations or warranties and without recourse. Subject to the foregoing:

a.      The MetLife Receiver is authorized to employ a marketing agent to list and market from time-to-time any or all of the MetLife Receivership Property, in whole or in part, and to enter into such agreements to sell any portion of the MetLife Receivership Property on a contingency commission arrangement based on the close of any such sale, provided that each such agreement, the sale price, the commission, and the sale procedures to be employed shall be as authorized by and subject to the terms, covenants, and conditions contained in the Deed of Trust along with all the Loan Documents (as those terms are defined in Plaintiff's complaint), shall be subject to Plaintiff's prior written consent, which may be given or withheld in the exercise of Plaintiff's sole opinion and judgment, and shall be subject to approval and confirmation by this

Court. The MetLife Receiver is excused from effectuating the sale of any MetLife Receivership Property in accordance with California Code of Civil Procedure § 568.5 and/or the provisions of the Enforcement of Judgments Act, and the MetLife Receiver may employ such sale procedures that the MetLife Receiver decides to employ in the exercise of the MetLife Receiver's discretion. Plaintiff and Defendants shall be kept apprised of the Receiver's efforts to market and sell the MetLife Receivership Property. The MetLife Receiver is further authorized to retain other professionals that the MetLife Receiver determines in his reasonable discretion to be necessary to effectively market and sell the MetLife Receivership Property including, but not limited to, real estate appraisers, environmental consultants, and development consultants. All real estate broker fees to be paid in connection with the MetLife Receiver's sale of the MetLife Receivership Property are subject to the prior approval of Plaintiff and this Court. Sales of Real Property shall be in accordance with 28 U.S.C. § 2001;

b.      Except as ordered by the Court after notice and a hearing, all sales of Real Property shall be subject to the express written approval of MetLife;

c.      The MetLife Receiver may conduct such sales of Borrower Defendant's inventory as the MetLife Receiver may deem prudent in the ordinary course of Borrower Defendant's business;

d.      The MetLife Receiver may sell equipment and other personal property Collateral at one or more commercially reasonable, professionally conducted auctions without any requirement to obtain an appraisal of such Collateral or Court order confirming such sales; and

e.      The MetLife Receiver may sell inventory, equipment and other personal property Collateral outside the ordinary course of Borrower Defendant's business(es) with an aggregate price not more than $150,000 to any one buyer, without further order of the Court, upon prior written approval from Plaintiff.

8.      The MetLife Receiver may contract for, hire and terminate agents, employees, appraisers, guards, clerks, accountants, liquidators, auctioneers, attorneys and management companies and consultants without cause, to administer the MetLife Receivership Property, assist the MetLife Receiver in his duties, and to protect the MetLife Receivership Property as the MetLife

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

[PROPOSED] ORDER GRANTING MOTION RE RECEIVER          -5-          CASE NO. 1:24-CV-01226-KES-SAB

Receiver deems necessary; purchase insurance, materials, supplies and services and pay therefore at the usual rate and prices out of funds that shall come into the Receiver's possession; pay the reasonable value of said services out of the proceeds of the estate; and no risk or obligation incurred by said Receiver shall be the personal risk or obligation of the Receiver, but shall be the risk or obligation of the MetLife Receivership Property, subject to applicable federal law.

9. The MetLife Receiver may engage a locksmith for the purposes of gaining entry to any of the MetLife Receivership Property through any security system to obtain any property or documents to which the MetLife Receiver is entitled pursuant to this Order. The MetLife Receiver may have locks or security codes changed, or have keys created that will work for the existing locks. The MetLife Receiver may obtain unfettered access to any electronic systems and/or accounts owned by Borrower Defendant ("Electronic Accounts"); provided however, that for the avoidance of doubt, electronic systems and/or accounts owned by other Defendants or affiliates of Borrower Defendant shall not be considered Electronic Accounts. Borrower Defendant shall provide, or shall direct its agents, partners, property managers, employees, assignees, successors, representatives, and all persons acting under and/or in concert with it to provide, the MetLife Receiver with any all means of accessing the Electronic Accounts, including but not limited to usernames, passwords, credentials, and/or the answers to challenge questions.

10. The MetLife Receiver may demand, collect, and receive all receipts, rents, profits, monies, security deposits, advance deposits, funds and payments arising from the MetLife Receivership Property, as a whole or as to any and all improvements thereon, and take all actions necessary or appropriate in furtherance thereof, including commencing any court actions, lawsuits, or other proceedings deemed appropriate by the MetLife Receiver in order to protect MetLife Receivership Property.

11. The MetLife Receiver may take any and all steps necessary to receive, collect and review all mail and deliveries addressed to Borrower Defendant and any post office boxes held in the name of Borrower Defendant and, at the MetLife Receiver's discretion, to instruct the U.S. Postmaster to re-route, hold, and or release said mail to the MetLife Receiver. Mail reviewed by

the MetLife Receiver in the performance of duties will promptly be made available for inspection to Borrower Defendant after review by the MetLife Receiver.

12.     The MetLife Receiver may take possession of all of Borrower Defendant's bank accounts and chattel paper that pertain to the MetLife Receivership Property wherever located and receive possession of any money on deposit in said bank accounts. The subject bank is discharged from further responsibility for accounting to Borrower Defendant for funds for which the MetLife Receiver has given a receipt.

13.     The MetLife Receiver may establish bank accounts at any bank the MetLife Receiver deems appropriate for the deposit of monies and funds collected and received in connection with the administration of the MetLife Receivership Property, provided that all funds on deposit are insured by an agency of the United States government. Borrower Defendant shall provide the MetLife Receiver within 48 hours of the MetLife Receiver's request all information, documentation and signatures required by any bank or other financial institution to open or maintain any accounts as provided under this Order.

14.     Upon presentation of a conformed copy of this Order to any third party, including but not limited to banks or depositories owing performance of any obligation or duty to MetLife with respect to the MetLife Receivership Property, such third parties shall render any performance or duties with respect to the MetLife Receivership Property directly to the MetLife Receiver.

15.     The MetLife Receiver may seek discovery of any books and records of Borrower Defendant's affiliates or other persons or entities that the MetLife Receiver deems necessary or desirable to carry out the MetLife Receiver's duties, including the books and records of Assemi Group, Inc. ("AGI") concerning or related to Borrower Defendant.

16.     The MetLife Receiver shall execute and prepare all documents and perform all acts, including entering into contracts, operating licenses, or signing checks or initiating and processing electronic funds transfers either in the name of Borrower Defendant, as it is applicable, or in the MetLife Receiver's own name, which are necessary or incidental to preserving, protecting, managing, controlling and/or liquidating the MetLife Receivership Property.

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

[PROPOSED] ORDER GRANTING MOTION RE RECEIVER          -7-          CASE NO. 1:24-CV-01226-KES-SAB

17.     The MetLife Receiver may compromise debts related to the MetLife Receivership Property and do all things and to incur the risks and obligations of similar businesses operating the MetLife Receivership Property. Subject to applicable federal law, no risk or obligation incurred by the Receiver shall be at the personal risk or obligation of the MetLife Receiver but shall be the risk or obligation of the MetLife Receivership Property.

18.     The MetLife Receiver may contact and bring and prosecute all proper actions for collection from any debtor on the accounts receivable for the Receivership Property ("Accounts Receivable Debtors") and advise them not to send further accounts receivable payments to Borrower Defendant and instruct the Accounts Receivable Debtors to send any and all payments directly to the MetLife Receiver.

19.     **Net proceeds from sale of MetLife Receivership Property, and other money coming into possession of the MetLife Receiver and not expended for any of the purposes herein authorized, shall be held by said Receiver for the payment of the obligations of Borrower Defendant to Plaintiff and other creditors, subject to such orders as the Court may hereinafter issue as to its disposition.**

20.     The MetLife Receiver may institute ancillary proceedings in this State or other states and countries, prosecute and tender all suits or insurance claims, and pursue all remedies available by law as is necessary to preserve and protect the MetLife Receivership Property and ensure compliance with the MetLife Receiver's authority. The MetLife Receiver may bring and prosecute all proper action for collection of payments, rent and lease payments due, if any, on the Receivership Property, as well as necessary actions and proceedings for the removal of tenants or lessees in default for any rental or lease agreement, or any other persons, from the MetLife Receivership Property, and may bring and prosecute all proper actions for the protection of the MetLife Receivership Property or recovery thereof.

21.     MetLife Receiver, as an agent of the Court, shall be entitled to the assistance of law enforcement officials when taking possession, or at any other time during the term of the MetLife Receivership, if in the opinion of MetLife Receiver, such assistance is necessary to preserve the peace and protect the MetLife Receivership Property, without further order from the Court.

22.     The MetLife Receiver may exclude any person or entity who does not have a lease or rental agreement from possession of the MetLife Receivership Property, or any portion thereof.

23.     The MetLife Receiver may assume, extend, or modify any pre-receivership contracts or agreements, including unexpired leases, relating to the MetLife Receivership Property, and/or reject such contracts in the MetLife Receiver's sole judgment and discretion.

24.     Unless otherwise ordered by the Court, the MetLife Receiver is not obligated to undertake and will have no liability for any remediation or cleanup with respect to hazardous materials presently existing under, on or about the Real Property. The MetLife Receiver is authorized, in its sole discretion, to initiate environmental due diligence, inspections, or other environmental monitoring it initiates, and shall have no liability for any hazardous materials presently existing under, on or about the Real Property.

25.     The MetLife Receiver shall be under no obligation to complete or file tax returns on behalf of Defendants for income or other taxes arising before the date of this order. The MetLife Receiver shall otherwise comply with all applicable laws and regulations relating to tax-reporting requirements. The MetLife Receiver shall furnish Defendants with such access to books and records within the MetLife Receiver's custody or control as reasonably may be necessary for Defendants to complete and file tax returns on their own behalf.

26.     The MetLife Receiver shall be entitled to utilize Borrower Defendant's tax identification numbers in connection with any powers exercised pursuant to this Order or, at the MetLife Receiver's discretion obtain new tax identification numbers.

27.     Any utility company providing services to the MetLife Receivership Property, including gas, electricity, water, sewer, trash collection, telephone, cable, communications Wi-Fi, Internet, or similar services, shall be prohibited from discontinuing and prohibited from failing to comply with any request by the MetLife Receiver to, and are prohibited from refusing to, reinstitute service to the MetLife Receivership Property based any non-payment by Borrower Defendant prior to the MetLife Receiver's appointment by the Court based upon unpaid bills incurred by Borrower Defendant. Further, such utilities shall transfer all rights to any deposits held by the utility company to the exclusive control of the MetLife Receiver and be prohibited from demanding that the MetLife

Receiver deposit additional funds in advance to maintain or secure such services. New accounts under the name of the MetLife Receivership may be established within 30 days, or the MetLife Receiver may continue to operate under Borrower Defendant's accounts.

28.    The MetLife Receiver may analyze the books, records, and files of (a) Borrower Defendant and (b) on order of the Court, following notice to the affected party, those of AGI or other person or entity with respect to Borrower Defendant, including bank account and accounting records to determine the sources and uses of cash, accounts, and asset sale proceeds, to investigate transfers of funds by or to Borrower Defendant, and to engage in other forensic accounting as deemed appropriate to the MetLife Receiver.

29.    The MetLife Receiver, on order of the Court, following notice and a hearing, and on the conditions or terms that the Court considers just and proper, may abandon any MetLife Receivership Property that is burdensome to the MetLife Receiver or is of inconsequential value or benefit. Property that is abandoned shall no longer constitute MetLife Receivership Property.

30.    The MetLife Receiver, or any party to this action, may from time to time, and on due notice to all parties, make application to the Court for further orders instructing said MetLife Receiver or expanding the MetLife Receiver's authority.

### Receivership Expenses

31.    The MetLife Receiver shall charge the amount of $30.00/acre/month for planted acres and $5.00/acre/month for fallow acres, leased acres (to a third party), and tree removal acres, subject to annual adjustment upon notice to the parties, plus expenses as identified and applied for and as approved by the Court, as set forth in the Declaration of Phillip Christensen filed in support of the MetLife Receivership Motion, paragraph 8 thereto, which is subject to annual adjustment upon notice to the parties.

32.    The MetLife Receiver shall pay the operating expenses of the MetLife Receivership Property from the income generated by the MetLife Receivership Property, and to the extent MetLife Receivership Property income is inadequate to pay the operating expenses, may borrow money from Plaintiff MetLife ("Receivership Advances").

33.     MetLife shall not be obligated to make Receivership Advances, but any such MetLife Receivership Advances shall be added to the obligations owed by Borrower Defendant to MetLife making said Receivership Advances. Receivership Advances shall bear interest at the rate provided under the Loan Documents (as defined in the Complaint) and shall be paid to the extent of available MetLife Receivership Property no later than upon approval of the MetLife Receiver's final report and account. If there is insufficient MetLife Receivership Property to repay the Receivership Advances in full, Borrower Defendant and the Defendant Guarantors individuals named in this action shall have sole liability to repay such deficiency to the extent described in the Complaint and accompanying Guaranty Agreements (as defined in the Complaint), and the MetLife Receiver shall have no liability to repay such deficiency.

34.     The MetLife Receiver may issue to Plaintiff, as Collateral Agent for MetLife, MetLife Receiver's Certificates to evidence Receivership Advances, with such Receiver's Certificates to be liens against the Receivership Property that have priority over all other liens, interests and claims against the MetLife Receivership Property on a priority repayment basis, except for fees and costs approved under Paragraph 36. The original Certificates shall be delivered to Plaintiff, to be filed and/or recorded in Plaintiff's discretion.

35.     Within 30 days following entry of this Order, the MetLife Receiver shall prepare an operating budget for the receivership (the "Budget") and submit it to Plaintiff for approval, which must include all anticipated fees, expenses, and disbursements of the MetLife Receivership Property.

36.     The MetLife Receiver is authorized to make payment for any bond, fees and costs, and for the MetLife Receiver's fees and fees and costs of professionals, by filing a notice of intent to compensate professionals and serving such notice, together with a reasonably detailed description of the time periods, services and amount requested, on the parties or their counsel, if applicable, creditors having liens, security interests or other interests on or in the MetLife Receivership Property, and anyone else filing an appearance in this case. If no party in interest objects to such notice within 10 calendar days of its filing and service, the fees and costs shall be deemed approved as being fully and finally earned without further order or leave of the Court. If a

party objects, the party will serve a written objection on the MetLife Receiver stating the nature and scope of the objection. Upon receipt of an objection, the MetLife Receiver and the objecting party must first attempt to resolve the objection through negotiation. If the objection cannot be so resolved, the objecting party may file its objection in Court within 7 days after the date of the objection. Unless otherwise agreed by the MetLife Receiver, any objection not filed within 7 days after the date of service of the objection is deemed waived. Only those portions of the fees and costs that are the subject of a timely objection will be withheld from payment until the objection is resolved, and all other portions of the fees and costs will be deemed approved without further order or leave of the Court. The approved fees and costs of the Receiver and its professionals shall be paid from the gross receipts derived from the MetLife Receivership Property and shall be a first-priority lien on MetLife Receivership Property. If MetLife Receivership Property is not sufficient to pay the MetLife Receiver's fees and its professional's fees as presented, the Plaintiff shall advance funds to the Receiver sufficient to pay such approved fees and costs. Any such advance will be considered a Receivership Advance.

37.     The MetLife Receiver may employ a law firm as MetLife Receiver's legal counsel ("MetLife Receiver's Counsel") in this matter, as reasonably necessary to accomplish the purposes of this Order. Compensation to MetLife Receiver's Counsel shall be based on an hourly rate not to exceed $700.00 per hour, subject to annual adjustment upon notice to the parties. MetLife Receiver's Counsel shall be entitled to reimbursement of all reasonable costs and expenses incurred on behalf of the MetLife Receivership estate. The attorneys' fees and cost incurred by Receiver's Counsel may be included in the administrative costs and expenses to be paid to the Receiver in accordance with paragraph 36 of this Order.

## **Financial Reporting**

38.     To the extent feasible, the MetLife Receiver shall, within thirty (30) days of qualification hereunder, file in this action an inventory of all property of which the MetLife Receiver has taken possession pursuant to this Order and shall conduct periodic accountings thereafter.

39.     Beginning on the second Thursday following approval of the Budget and weekly thereafter, the MetLife Receiver shall provide the Plaintiff with weekly reporting regarding the MetLife Receivership Property's performance under the Budget, including a variance report with explanations for any negative variance on a line-item basis. The Receivership Advances authorized above shall be consistent with the Budget. Total disbursements for any particular measurement period on an aggregate, accumulated, and rolling basis, shall not exceed any line item in an approved budget by more than 10 percent of Budgeted amounts, without the written consent of the Plaintiff. The MetLife Receiver and the Plaintiff may amend the Budget from time to time by agreement.

40.     The MetLife Receiver shall provide the Court, the parties or their counsel, if applicable, and anyone else filing a notice of appearance in the case, monthly reports on the operations and financial affairs of the MetLife Receivership Property (each, a "Report"). Each Report shall be due by the last day of the subsequent month and shall include: (a) a balance sheet; (b) a statement of income and expenses; (c) a cash flow statement; (d) a statement of accrued accounts receivable of the receiver, with amounts considered uncollectable; (e) a statement of accounts payable of the receiver, including professional fees; (f) MetLife Receivership Property sale progress reports; and (g) a narrative summary of the operations, if any, of the MetLife Receivership Property. The MetLife Receiver's Report shall also include a copy of any Receivership Certificates issued during the period covered by the Report. The MetLife Receiver's first Report shall be a report of the first two months of operation.

41.     If there is insufficient insurance coverage on the MetLife Receivership Property, the MetLife Receiver shall have thirty (30) business days to procure said insurance on the Receivership Property, provided the MetLife Receiver has funds available to do so, and during said period, the Receiver shall not be personally responsible for claims arising or for the procurement of insurance. With respect to any insurance coverage, the MetLife Receiver, and other parties with insurable interest, shall be named as additional insureds on the policies for the period that the MetLife Receiver shall be in possession of the MetLife Receivership Property. With respect to any property coverage in existence or obtained, Plaintiff shall be named as the mortgagee and loss payee.

**Procedure for Notice and Hearing**

42.    To the extent this Order requires Court approval for any action herein, the MetLife Receiver may file a notice of proposed action and proposed Order, with a seven-day response time. If no party-in-interest files a written objection to the proposed action or form of Order within the Response Time, the MetLife Receiver may submit such Order for entry by the Court, supported by a declaration attesting that no objections were filed.

**Preliminary Injunction**

43.    Borrower Defendant and its respective owners, agents, partners, property managers, employees, assignees, successors, representatives, members, managers, creditors, lessors, customers, tenants, lienholders of MetLife Receivership Property, and other persons seeking to establish or enforce any claim, right or interest against or on behalf of Borrower Defendant, and all others acting for or on behalf of such persons or acting under and/or in concert with them, including attorneys, trustees, agents, sheriffs, constables, marshals and other officers and their deputies, and their respective attorneys, agents, servants, and employees, excluding Plaintiff ("Restrained Parties") are hereby preliminarily enjoined as of 10/31/2024 at 5:00 p.m. (pt) as follows:

a.    Restrained Parties shall not interfere with the MetLife Receiver in the performance of his duties, or commit or permit any waste of the MetLife Receivership Property.

b.    Restrained Parties shall not transfer any part of the MetLife Receivership Property, including cash proceeds of operations, to any third party for any purpose other than payment bona fide accounts payable to unaffiliated third parties of Borrower Defendant for its business operations.

c.    Restrained Parties shall not expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal, or in any manner whatsoever deal in or dispose of the whole or any part of the MetLife Receivership Property without prior Court order.

d.    Restrained Parties shall not commence, prosecute, continue or enforce any suit or proceeding against Borrower-Owners, except as such actions may be filed to toll any applicable statutes of limitations with respect to MetLife Receivership Property.

e.      Restrained Parties shall not commence, prosecute, continue or enter into any suit or proceeding in the name or on behalf of Borrower Defendant with respect to property of the MetLife Receivership Property.

f.      Restrained Parties shall not accelerate the due date of any obligation or claimed obligation, enforce any lien upon, or take or attempt to take possession of, or retain possession of, any of the MetLife Receivership Property, or any property claimed by any of them or attempting to foreclose, forfeit, alter, or terminate any of Borrower Defendant's interest in property, including, without limitation, the establishment, grant or perfection of any security interest, whether such acts are part of a judicial proceeding or otherwise with respect to the MetLife Receivership Property.

g.      Restrained Parties shall not use self-help or execute or issue, or cause the execution or issuance, of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon, any property, wheresoever located, owned by or in the possession of Borrower Defendant or the MetLife Receiver appointed pursuant to this Order or any agent appointed by said MetLife Receiver with respect to MetLife Receivership Property; and

h.      Restrained Parties shall not do any act or thing whatsoever to interfere with the Receiver taking control, possession or management of property of the MetLife Receivership Property or any other property subject to this MetLife Receivership, or to in any way interfere with the MetLife Receiver, or to harass or interfere with the duties of the MetLife Receiver, or to interfere in any manner with the exclusive jurisdiction of this Court over the property and assets of the MetLife Receivership Estate, including refusing to turn over MetLife Receivership Property upon demand by the MetLife Receiver. Provided, however, nothing in this paragraph shall prohibit any federal or state law enforcement or regulatory authority from commencing or prosecuting an action against the MetLife Receivership Estate with respect to MetLife Receivership Property.

44.      The Restrained parties are hereby affirmatively required to provide full and immediate access to the MetLife Receiver of all books and records, including banking records and Electronic Accounts, of Borrower Defendant and access to its bank accounts. Restrained Parties,

1    by and through appropriate and knowledgeable persons employed by Borrower Defendant,

2    promptly shall respond to any and all inquiries from the Receiver as to operations. Restrained

3    Parties shall provide the MetLife Receiver with all keys, access codes, passwords, usernames,

4    security questions and answers, and credentials to access Borrower Defendant's books and records,

5    including Electronic Accounts.

6            **IT IS FURTHER ORDERED.**

7            Defendants shall have the right to apply to the Court for modification or dissolution of this

8    Order according to the Local Rules for the United States District Court for the Eastern District of

9    California.

10   **IT IS SO ORDERED:**

11   Dated: _____

12

13                                    _____
                                      United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28